# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### BRUNSWICK DIVISION

CLAUDIO MORALES,

        Petitioner,

    v.

L.A. JONES, Acting Warden,

        Respondent.

CIVIL ACTION NO.: 2:18-cv-028

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Claudio Morales ("Morales"), who is incarcerated at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"), filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondent filed a Response, (doc. 11), and Surreply, (doc. 14). Petitioner filed a Reply, (doc. 13), and a Motion to Strike Respondent's Surreply, (doc. 16), as well as a Motion for Discovery, (doc. 10), which Respondent opposed, (doc. 12). The Court **DENIES** Morales' Motion to Strike and Motion for Discovery. However, for the reasons which follow, I find that the Bureau of Prisons ("BOP") did not afford Morales with the basic guarantees of due process surrounding the disciplinary sanctions against him. Thus, I **RECOMMEND** the Court **GRANT** Morales' Petition, **ORDER** Respondent to restore Morales with twenty-seven (27) days' good conduct credit and expunge this violation from Morales' BOP records, and **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case.

# BACKGROUND

Morales was convicted in the United States District Court for the Southern District of Florida for conspiracy to possess with intent to distribute 5 or more kilograms of cocaine. (Doc. 1-1, pp 10–11.) He was originally sentenced to 292 months' imprisonment on August 1, 2006, but his sentence was later reduced to 176 months. (Id.) Morales has a projected release date of January 30, 2019, via good conduct time credit. (Id. at p. 9.)

In his Petition, Morales asserts that his due process rights were violated during disciplinary proceedings in which a BOP Disciplinary Hearing Officer ("DHO") found Morales committed the offense of fighting. (Doc. 1.) Due to this finding, the DHO disallowed Morales from receiving twenty-seven (27) days of good conduct time, placed him in disciplinary segregation for fifteen (15) days, and rescinded his commissary privileges for 180 days. (Doc. 11-1, p. 18.)

Morales' disciplinary proceeding arose out of an incident occurring on July 27, 2017. (Id. at p. 19.) On that date, Morales and another prisoner, Martin Tasis, were allegedly involved in a physical altercation in the prison's restroom. (Id.) The incident report describes the incident between Morales and Tasis as follows:

> On July 27, 2017, at 11:15 a.m., Recreation Staff heard a loud commotion coming from the inmate restroom at the FSL facility. Staff approached the area and observed four inmates exit the restroom. The four inmates were Morales, Claudio Reg. No. 76553-004, Tasis, Martin 83915-004, Enriquez, Enrique, Reg No. 07567-104, and Jarquin, Alfredo, Reg. No. 95984-004. The four inmates were sent to the Operations Lieutenant's Office. Interviews with the four inmates revealed that inmates Tasis and Morales were involved in a physical altercation. The interviews further revealed that inmates Enriquez and Jarquin separated the inmates. Inmates Tasis and Morales were photographed, medically assessed, and placed in the Special Housing Unit, pending the completion of a SIS investigation.
>
> On August 17, 2017, at 8:00 a.m., the SIS Department completed a SIS Case and found that there was sufficient evidence to substantiate that inmates Morales . . .

and Tasis . . . were involved in a physical altercation on July 27, 2017, at 11:45 a.m., in the FSL recreation bathroom. Specifically, staff heard a commotion in the bathroom. Staff responded to the area and observed four inmates exiting the bathroom. Inmates Tasis and Morales admitted during the interview process that they were involved in a disagreement. Additionally, inmates Morales and Tasis both signed affidavits stating that they did wrestle with each other and that their issues are over and they can return to general population together, without further issues. Photographs and medical assessments revealed superficial scratches around both eyes of inmate Tasis. Additionally, the interview process revealed that other inmates observed inmates Morales and Tasis wrestling in the bathroom. The witnesses also stated that they separated inmates Morales and Tasis.

(Id. at p. 19.) The "reporting employee" concluded the incident report with a determination that Morales and Tasis would be issued an incident report for "code 220, Wrestling." (Id.) The Unit Disciplinary Committee ("UDC") Chairman referred the incident to the DHO for a hearing. (Id. at pp. 19–20.) The UDC recommended that Morales receive fifteen (15) days' disciplinary segregation and ten (10) days' loss of good conduct time. (Id. at p. 20.)

While Morales agrees that he and Tasis were involved in "horseplay," he disagrees that it was a fight. On August 2, 2017, Morales signed an affidavit in which he provided the following description of the incident:

I was involved in a disagreement with inmate Tasis. I help him lose weight. We did wrestle around. I was trying to force him to reweigh with his boots off. He said no. It was us joking about him reweighing. It wasn't a big issue. He got the scratches on his face from my watch. We were just playing around. We have resolved our issues and can return to the compound together without further issues.

(Doc. 11-2.)

On August 17, 2017, at 2:10 p.m., a BOP employee provided Morales with a copy of the incident report, advised Morales of the charges against him, and advised him of his rights. (Doc. 11-1, pp. 19–21.) According to the BOP investigator, Morales stated that he agreed with the incident report. (Id. at p. 21.) On August 22, 2017, Morales also received and signed a Notice of Discipline Hearing Before the DHO, which again advised him that the charge against

him was a Code 220. (Id. at p. 22.) The notice also advised him of his rights before the DHO, including the right to: receive a written copy of the charges against him; representation at the hearing; call witnesses and present evidence; testify or remain silent; be present throughout the disciplinary hearing; be advised of the DHO's decision and the facts supporting the decision; and the right to appeal. (Id. at pp. 22–23.) Morales indicated that he did not want to have a staff representative at the hearing and that he did not intend to call witnesses. (Id.)

On August 29, 2017, DHO Victor Santana conducted a hearing regarding the charges against Morales. (Id. at pp. 5, 17.) At the commencement of the hearing, Santana advised Morales that the charge code would be changed from 220 Wrestling to 201 Fighting. (Id. at pp. 5, 18.) In his Affidavit attached to the Respondent's Response, DHO Santana states that he changed the code "because the 201 charge was more closely supported by the report and did not increase or decrease the offense severity level." (Id. at p. 5.) The DHO states that both charges are "High Severity 200 level" offenses that carry the same available sanctions under the BOP's regulations. (Id.)

DHO Santana issued a written DHO report sometime following the hearing. (Id. at pp. 17–18, 24.) The DHO found, based upon the greater weight of the evidence, that Morales committed the offense of fighting. (Id. at p. 12.) To reach this conclusion, the DHO relied upon the reporting officer's statement, Morales' and Tasis' affidavits, photographs, medical assessments, and the interviews of other inmates. (Id. at p. 18.) The DHO also stated that Morales "admitted that [he] fought with inmate Tasis . . . and [Morales] also stated that he exchange[d] punches with him due to a misunderstanding." (Id. at p. 17.) The DHO considered Morales' "own admission of the charge by [him] stating that it is true that [he] fought with

inmate Tasis." (<u>Id.</u> at p. 18.) Throughout his pleadings before the Court, Morales disputes that he admitted that he exchanged punches with Tasis, and he disputes that he and Tasis fought.

The DHO sanctioned Morales by placing him in disciplinary segregation for fifteen (15) days, disallowing twenty-seven (27) days of good conduct time, and revoking commissary privileges for 180 days. (<u>Id.</u>) The DHO avers that he completed his report on August 29, 2017, and provided the report to Morales' case manager. (<u>Id.</u> at pp. 6, 24.) However, the DHO report was not delivered to Morales. (<u>Id.</u>) After Morales filed this Petition, the DHO provided a copy of the DHO report to Morales' current case manager, who provided it to Morales on April 24, 2018. (<u>Id.</u>) At the bottom of this copy of the DHO report, the DHO stated that, though the report was delivered to Morales after the standard fifteen (15) days provided by BOP regulations, the delay did not hinder Morales' appeal rights. (<u>Id.</u> at p. 24.)[1]

In his Section 2241 Petition, filed on March 19, 2018, Morales argues that the DHO violated his due process rights by changing the charged prohibited act code from Code 220, wrestling, to Code 201, fighting without providing Morales notice twenty-four hours in advance of the DHO hearing. (Doc. 1, pp. 6–7.) Morales also claims that the DHO violated his due process rights by failing to provide a written copy of the DHO report.

Following the Court's Show Cause Order, Respondent's original deadline to respond to Morales' Petition was April 27, 2018. (Docs. 4, 5.) However, on April 20, 2018, Respondent requested additional time to respond to the Petition, stating that he needed additional time to "obtain the documentation regarding the claims alleged in the Petition." (Doc. 8, p. 1.) The Court granted Respondent's Motion and extended the deadline to May 11, 2018. (Doc. 9.)

---

[1]  Respondent has not produced a copy of the DHO report without this language regarding the late production of the report to Morales. Thus, as Morales avers throughout his pleadings, there appears to be a dispute of fact as to whether the DHO report was actually created in August 2017. However, the Court need not resolve that dispute. As explained below, regardless of whether the DHO created his report in August 2017, there is no evidence that Morales actually received the report at that time.

Then, on April 24, 2018, the DHO, through the case manager, provided Morales with a copy of the DHO report. (Doc. 11-1, p. 24.) In his Response, Respondent argues, among other things, that Morales' contention regarding not receiving a DHO report is now moot, because Morales had now been provided with a copy of the DHO report. (Doc. 11, pp. 8–9.) Respondent also argues that the DHO properly changed Morales' charge from 220, Wrestling to 201, Fighting. (Id. at pp. 7–8.) Morales filed a Reply in which he challenges the Respondent's characterization of the case and continues to argue the DHO failed to provide advance notice of the charge against him and failed to provide him with a copy of the DHO report until after he filed his Section 2241 Petition. (Doc. 13.) Respondent then filed a Surreply and attached a second affidavit from DHO Santana and offering additional argument regarding the DHO's change of the charge from wrestling to fighting. (Doc. 14.) Morales moved to strike Respondent's Surreply and also offered argument in opposition to the points Respondent raised in the Surreply. (Doc. 16.)

## DISCUSSION

### I. Morales' Motion for Discovery

In his Motion for Discovery, Morales seeks two categories of evidence: (1) any audio recording of the DHO hearing and a transcribed copy of the recording; and (2) the documentary evidence relied upon by the DHO, including statements of correctional officers, photographs of Morales and Tasis, and the medical records of the inmates. (Doc. 10, p. 2.) Respondent contends that the BOP does not maintain any recordings or transcripts of DHO hearings. (Doc. 12, p. 3.) Additionally, Respondent states that the materials Morales requests could not support his claims for relief.

This Court has explained a habeas petitioner's limited right to discovery as follows:

> "A habeas petitioner . . . is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997). However, pursuant to Rule 6 of the Rules Governing § 2254 Cases, the court may authorize a party to conduct discovery upon a showing of "good cause." 28 U.S.C. § 2254, Rule 6; see also Bracy, 520 U.S. at 904. Good cause is demonstrated "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." Bracy, 520 U.S. at 908–09 (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)) (ellipsis omitted). "[G]ood cause for discovery cannot arise from mere speculation" or "pure hypothesis." Arthur v. Allen, 459 F.3d 1310, 1311 (11th Cir. 2006) (per curiam), *modifying* 452 F.3d 1234 (11th Cir. 2006).

Heidler v. Chatman, No. CV 611-109, 2014 WL 725985, at *5 (S.D. Ga. Feb. 24, 2014). Under this standard, Morales is not entitled to the discovery he requests. The claims Morales asserts, that he was not given notice of the DHO's change in the charge code at least twenty-four (24) hours before the hearing and that he was not given a copy of the DHO report, do not hinge on factual disputes regarding what occurred at the hearing. Indeed, Morales' claims do not hinge on any factual disputes, as Respondent admits that Morales was not given advance notice of the change in the charge code and does not contest that Morales did not receive a copy of the DHO report until after he filed his habeas petition. Moreover, Morales does not base his claims on whether the DHO reviewed sufficient evidence to support the charges against him.[2] Further, as explained below, the record before the Court establishes the violation of Morales' right to due process without the need for any additional discovery.

---

[2] In his Reply in Support of his Motion for Discovery, Morales confirms, "[i]n this case, petitioner's claim is that his due process rights were violated by the DHO when he changed the offense code that was charged in the incident report without providing the required 24-hour notice prior to the DHO hearing, and when the DHO failed to provide a copy of the DHO report." (Doc. 15, p. 5.) This is not to say that Morales agrees that the evidence was sufficient to support the charge of fighting. He contests that point throughout his pleadings. However, as explained below, Morales could not have challenged the sufficiency of the evidence relied upon by the DHO in his administrative appeals or his Section 2241 Petition, because he did not receive a copy of the DHO report until after he exhausted the administrative process and after he filed his Petition.

Consequently, the documentary evidence Morales seeks, even if it does exist, would not be material to his claims. Put another way, there is no reason to believe that the requested discovery would demonstrate that Morales is entitled to relief. See Bracy, 520 U.S. at 908–09. Therefore, the Court **DENIES** his Motion for Discovery.

## II. Morales' Motion to Strike

Following Morales' Reply to Respondent's Response to Morales' Petition, Respondent filed a Surreply. (Doc. 14.) In that brief and attached affidavit from DHO Santana, Respondent replies to Morales' claim that the DHO exhibited bias toward Santana by treating him differently than Tasis. (Id.) Additionally, Respondent brings to the Court's attention, for the first time, the Eleventh Circuit Court of Appeals' opinion in Santiago-Lugo v. Warden, 785 F.3d 467 (11th Cir. 2015), and argues that opinion supports denial of Morales' claim that the change in his charge code violated his due process rights. (Id.)

Morales asks the Court to strike Respondent's Surreply because it is not authorized by the rules and also argues that the Surreply is repetitive of the Respondent's other pleadings. (Doc. 16.) While a surreply is not explicitly provided for by this Court's Local Rules, the Rules of Civil Procedure, or the Rules Governing 2254 Cases, these Rules also do not prohibit the filing of a surreply. This Court, like most courts, permits the filing of a surreply brief even when the filer has not sought prior permission for the Court. See, e.g., Lookin Good Properties, LLC v. Ascot Corp. Names Ltd., No. CV412-138, 2014 WL 1002114, at *2 (S.D. Ga. Mar. 12, 2014) ("As to Plaintiffs' surreplies . . . the Court has previously taken a liberal stance on such briefs, finding that the notice and filing deadlines are for the benefit of the Court, not the opposing party."), aff'd sub nom., Lookin Good Properties, LLC v. Johnson & Johnson Inc., 586 F. App'x 581 (11th Cir. 2014) (per curiam); EEOC v. TBC Corp., 889 F. Supp. 2d 1368, 1373 (S.D. Ga.

2012) (The court considered all briefs, including surreply briefs, because "notice and timing provisions of Local Rule 7.6 cannot be used by an opposing party to have a brief stricken or not considered."), *aff'd*, 532 F. App'x 901 (11th Cir. 2013) (per curiam); <u>Brown v. Chertoff</u>, No. 406CV002, 2008 WL 5190638, at *1 (S.D. Ga. Dec. 10, 2008) (citing <u>Podger v. Gulfstream Aerospace Corp.</u>, 212 F.R.D. 609 (S.D. Ga. 2003)); <u>Powell v. Wheelis</u>, No. CIV.A. CV203-195, 2006 WL 839380, at *1 n.1 (S.D. Ga. Mar. 29, 2006) (Local Rule 7.6 "does not restrict reply briefs to the moving party's initial reply brief. The rule references 'a party intending to file a reply brief [,]' not 'the moving party[.]' The rule further mandates that service be made within eleven days of the opposing party's 'last brief.' If the rule were as restrictive as Plaintiff would have it, it would not have been phrased in such general and permissive terms. Consequently, Plaintiff's argument that leave of Court was required before Defendants filed their surreply is not well taken."), *aff'd sub nom.*, <u>Powell v. W&W Hauling, Inc.</u>, 226 F. App'x 950 (11th Cir. 2007) (per curiam).

Morales has not provided any cause for deviating from this long-standing practice in this case. Moreover, Morales has not established that he has been prejudiced in any way from the filing of the Surreply. He has fully responded to the arguments raised in the Surreply in his Motion to Strike. For all of these reasons, the Court **DENIES** Morales' Motion to Strike.[3]

## III.    Morales' Due Process Claims

A prisoner has a protected liberty interest in statutory good time credits, and therefore, a prisoner has a constitutional right to procedural due process in the form of a disciplinary hearing before those credits are denied or taken away. <u>O'Bryant v. Finch</u>, 637 F.3d 1207, 1213 (11th

---

[3] This is not to say that the Court encourages the filing of surreply briefs. The Court expects the filing of a surreply to be the exception rather than the norm. Particularly in a case such as this where the Respondent used the Surreply to make arguments that are responsive to Petitioner's original claims and are based on a case existing long before Respondent's original brief, the parties should not need to resort to surreply briefs.

Cir. 2011) (citing <u>Wolff v. McDonnell</u>, 418 U.S. 539, 555–57 (1974)).  That due process right is satisfied when the inmate: (1) receives advance written notice of the charges against him; (2) is given the opportunity to call witnesses and present documentary evidence; and (3) receives a written statement setting forth the disciplinary board's findings of fact.  <u>Id.</u> (citing <u>Wolff</u>, 418 U.S. at 563–67).  Additionally, the Court of Appeals for the Eleventh Circuit has determined that an inmate has the right to attend his disciplinary hearing.  <u>Battle v. Barton</u>, 970 F.2d 779, 782–83 (11th Cir. 1992).  "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  <u>Wolff</u>, 418 U.S. at 556.

### A. The DHO Failed to Provide Adequate Advance Written Notice of the Charges

Morales first challenges whether the DHO violated his due process right by failing to provide twenty-four (24) hours' written notice of the charge against him.  Specifically, Morales claims that the DHO changed the charge against him at the commencement of the hearing with no prior notice.  Throughout his pleadings, Morales contends that, while the change in charge did not change the offense severity level and the maximum available punishment, it practically changed the punishment because the BOP's DHOs have a pattern of imposing sanctions according to the charged offense code, and Code 201 is considered more severe than Code 220. (Doc. 13, pp. 9–12; Doc. 16, pp. 7–8.)  Morales claims that "[t]he different prohibited acts defined in the 200 series range from a code 201 being the most severe, to a code 299 being the less severe in that series . . . and DHO officers moreover, have administered these sanctions in a proportionate way according to the severity of the charged offense within the given series." (Doc. 13, p. 9.)  Morales states that, while there was evidence that he and Tasis wrestled with each other, they did not engage in a fight.  (<u>Id.</u> at p. 12 ("Here, both inmates admitted to sort of

wrestle with each other in relation to get on the scale to weight themselves. The incident report contains no indication of a fight as to throwing punches with closed fists.").) Morales argues that if he had known that he was being charged with fighting prior to the hearing, he would have been prepared to call witnesses to dispute that charge. (Doc. 16, pp. 6–7 ("He would have also requested the two inmate witnesses to testify as to whether they saw a fight, or just merely horse-play wrestling between inmate Tasis and Morales. He would have also requested the staff witness who heard the commotion to testify as to what type of commotion was heard, whether verbally, or thumping or thrashing sounds.").)

Respondent concedes that DHO Santana changed Morales' charge from 220 Wrestling to 201 Fighting at the hearing without prior notice "because the 201 charge was more closely supported by the report and did not increase or decrease the offense severity level." (Doc. 11-1, p. 5, 18.) However, Respondent argues the DHO did not need to provide advance notice to Morales of the change in the charge because the change did not increase the potential punishment Morales faced. (Doc. 11, p. 8 (change did not require additional prior notification to the Petitioner because both the 220 and 201 charges are "High Severity 200 level" offenses that are subject to the <u>same available sanctions</u>.") (emphasis in original).) Respondent further contends that the DHO had the authority to change the charge under 28 C.F.R. § 541.8(a)(1).

In his original brief, Respondent contends <u>Williams v. Fountain</u>, 77 F.3d 372, 376 (11th Cir. 1996), supported this position. (<u>Id.</u>) Respondent baldly argues, "[h]ere, because Petitioner has admitted to participating in the disagreement that resulted in a physical altercation, and the available sanctions for wrestling and fighting are the same, the DHO could not have violated, as a matter of law under <u>Williams</u>, Petitioner's due process rights." (<u>Id.</u>) However, <u>Williams</u> is not helpful to the Court's analysis of Morales' claims. <u>Williams</u> did not address the advance notice

requirement or a change in the charge against an inmate. Instead, the court addressed the disciplinary hearing officer's apparent failure to evaluate the credibility of the confidential informants who provided information in support of the charge against the inmate. Williams, 77 F.3d at 374–76 (citing Kyle v. Hanberry, 677 F.2d 1386, 1390–91 (11th Cir. 1982)). The Eleventh Circuit, citing Superintendent, Mass. Correctional Institution v. Hill, 472 U.S. 445, 454 (1985), conducted a sufficiency of the evidence analysis and explained that the sanctions against the inmate were supported by sufficient evidence independent of the confidential informants' statements, namely the inmates' statement. Id. at 375–76 ("A minimum requirement of due process is that conclusions of prison disciplinary bodies be 'supported by some evidence in the record.'") (quoting Hill, 472 U.S. at 454). However, Williams' "some evidence" analysis has no place in a case such as Morales' where the inmate challenges the notice requirements of due process rather than the sufficiency of the evidence.

For example, in Dean-Mitchell v. Reese, 837 F.3d 1107 (11th Cir. 2016), the inmate admitted to the DHO that the facts in the incident report were true. However, he challenged whether he received a copy of the incident report prior to the hearing and the DHO's report after the hearing. 837 F.3d at 1113. The district court granted the warden's motion for summary judgment, and the Eleventh Circuit reversed, explaining:

> It is apparent that the district court applied the "some evidence" language from Hill, 472 U.S. 445, . . . in which the Supreme Court concluded that the factfinder's decision in a disciplinary proceeding must be 'supported by some evidence in the record.' Id. at 454. . . . However, as both parties acknowledge, the holding in Hill is "irrelevant" "when the basis for attacking the judgment is not insufficiency of the evidence." Edwards v. Balisok, 520 U.S. 641, 648 . . . (1997) (providing that Hill did not abrogate the due process requirements enunciated in Wolff, but merely held that in addition to those requirements, some evidence must support the decision to revoke Good-Time credits).

Id. In this case, Morales does not challenge the sufficiency of the evidence against him or the use of confidential statements. Consequently, the "some evidence" analysis of Williams and its reliance on Hill is "irrelevant" to the facts of this case.[4]

More analogous to this case (yet still distinguishable) is the Eleventh Circuit's opinion in Santiago-Lugo Respondent cites in his Surreply. The petitioner in Santiago-Lugo received an incident report that charged him with "BOP Code 108, Possession of a Cellular Phone," but the DHO found that he had violated "BOP Code 199, Conduct Which Disrupts or Interferes with the Security or Orderly Running of the Institution (Most like Possession of a Hazardous Tool; Cell Phone, Code 108)." 785 F.3d at 470. The Eleventh Circuit held that the DHO's change in charge code did not violate the petitioner's due process rights because: (1) the incident report informed him that "he was charged with possessing and using a cellular phone, the same conduct that served as the basis for his violation of BOP Code 199;" (2) the only evidence the petitioner stated he would have presented at the DHO hearing if he knew of the changed charge code was "equally relevant" to the charge in the incident report; (3) the violations are subject to the same sanctions; and (4) the BOP's regulations allow a DHO to find "that an inmate 'committed the prohibited act(s) charged, *and/or a similar prohibited act(s)* as described in the [notice].'" Id. at 476 (quoting 28 C.F.R. § 541.8(a)(1) (emphasis in original)). The Eleventh Circuit based its decision on the premise that "[t]he purpose of the advance notice requirement . . . 'is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact.'" Id. (quoting Wolff, 418 U.S. at 564).

---

[4]  The only similarity between Williams and Morales' case appears to be that in both hearings the DHO found the inmates to have committed the offense of fighting with another inmate and in both cases the DHO contended that the charged inmate admitted to the incident at the hearing. However, Williams does not stand for the proposition that, in any case where an inmate has allegedly admitted to the violation, the DHO cannot violate the inmate's due process rights "as a matter of law," as Respondent appears to suggest. (Doc. 11, p. 8.) Indeed, the holding in Dean-Mitchell, where the inmate admitted to the charge, refutes such a suggestion.

Unlike Santiago-Lugo, the unique facts of Morales' case demonstrate that the documents he received prior to the DHO hearing did not clarify the changed charge against him and provide the opportunity to marshal facts in his defense to that charge. Both the incident report and the notice of disciplinary hearing charged Morales with Code 220, Wrestling. Wrestling is a charge that Morales had previously admitted to in his August 2, 2017, affidavit wherein he agreed that he and Tasis "did wrestle around." (Doc. 11-2.) However, in that same affidavit, Morales clearly disputed that he and Tasis were involved in a fight, as he stated that they "were just playing around" and "joking." (Id.) In congruence with his prior admission that he and Tasis wrestled and the fact that he was charged with wrestling, Morales indicated prior to the hearing that he agreed with the incident report and that he did not intend to call witnesses to dispute the charge of wrestling. (Doc. 11-1, pp. 21–23.) However, at the hearing, the DHO changed Morales' charge from conduct to which he had agreed to, wrestling, to a charge that Morales had previously disputed, fighting. This "bait and switch," whether inadvertent or intentional, left Morales unprepared to defend himself at the disciplinary hearing.

Moreover, unlike the change in charge code in Santiago-Lugo, the change in Morales' charge code substantively changed the nature of the allegations against him and the evidence relevant to the charge. While the petitioner in Santiago-Lugo was found to have committed "the same conduct" that he was originally charged with, Morales was found guilty of fighting, which entails similar but importantly different conduct than his original charge of wrestling. While wrestling typically refers to a form of sport or "horseplay," fighting entails more serious conduct of violent conflict. Unlike the petitioner in Santiago-Lugo, Morales has pointed to specific evidence that he would have presented at the hearing had he known of the change in the charge prior to the hearing. This evidence would have been relevant to his defense of the charge that he

and Tasis engaged in a fight, but it was not relevant to disputing whether he and Tasis wrestled. For instance, Morales states he would have called the two other inmates who were in the bathroom to testify as to whether Tasis and Morales were fighting or "merely horse-play wrestling." (Doc. 16, pp. 6–7.)

As was the case in <u>Santiago-Lugo</u>, Morales' new charge code was of the same BOP severity level as the original charge code, and the DHO had the same range of sanctions available. However, Morales makes a logical argument that fighting would be seen as a more serious violation than wrestling, and therefore, would receive a higher punishment within the available range. The record supports that argument. Based on the original charge of wrestling, the UDC recommended that Morales receive fifteen (15) days of disciplinary segregation and lose ten (10) days of good conduct time. (<u>Id.</u> at p. 20.) However, after finding that Morales committed the changed charge of fighting, the DHO implemented a much stiffer punishment: loss of twenty-seven (27) days of good conduct time, disciplinary segregation for fifteen (15) days, and rescission of commissary privileges for 180 days. (Doc. 11-1, p. 18.) In his statement of reasons supporting these sanctions, the DHO stressed the unique threats posed by fighting. (Doc. 11-1, p. 2 ("The action/behavior on the part of any inmate to become involved in a fight with any other inmate or person poses a threat to the health, safety and welfare of not only the person(s) involved, but that of all other inmates and staff. In the past, fights between two individuals have expanded to include others which created a larger problem for staff to resolve. Fighting can lead to a serious incident and could have escalated into a major confrontation between inmates and/or staff.")

Based on these circumstances, Morales failed to receive sufficient notice, in advance of his DHO hearing, to enable him to marshal the facts in his defense and to clarify what the

charges against him in fact were. Thus, he has shown that the resulting sanctions against him violate his right to due process.

**B.     Whether Morales Received a Written Statement Setting Forth the DHO's Findings of Fact**

The second violation of Morales' due process rights is more obvious than the first. As set forth above, when a disciplinary hearing officer revokes an inmate's good conduct time, the inmate must receive a written statement of the disciplinary board's findings of fact in order to satisfy the basic tenets of due process. Wolff, 418 U.S. at 563–67. To that end, the BOP's regulations provide that an inmate "will receive a written copy of the DHO's decision following the hearing." 28 C.F.R. § 541.8(h). The DHO "ordinarily" provides the DHO's report to the inmate within fifteen (15) work days. (Doc. 11-1, p. 6.) Throughout his pursuit of the BOP's administrative remedies, Morales complained that he had not received a copy of the DHO's report including the findings of fact. Remarkably, neither the DHO nor anyone in the BOP remedied this failure. Then, on August 24, 2018, 238 days after Morales' DHO hearing, and only after Morales filed this Section 2241 Petition and Respondent's counsel requested additional time to respond to that Petition, the DHO provided Morales a copy of his report.[5]

Respondent does not deny that Morales was not provided with a copy of the DHO report after the hearing, and "[as]sum[es] arguendo that Petitioner was not provided with a copy of the DHO report at the time of the hearing[.]" (Doc. 11, p. 9.) However, Respondent characterizes the April 24, 2018, production of the DHO report as "an additional copy." (Id. at p. 8.) To the extent Respondent implies that the DHO report was previously provided to Morales, that argument will not hold water. The April 24, 2018, copy of the DHO report states that it was not

---

[5] Respondent attempts to offer an excuse for this untimely provision based on a change in case managers. Morales disputes the facts underlying this excuse. Regardless of who Morales' case manager was, given the fact that Morales is incarcerated in the custody of the BOP, it should not have been difficult for someone in the BOP to locate him and provide him a copy of his DHO report.

provided to the inmate on time, and Respondent has not provided another copy of the DHO report. (Doc. 11-1, p. 24.) Moreover, on December 15, 2017, Morales requested a copy of the DHO report to the Unit Team Members, and the Unit Team responded "they had not received a copy of the DHO report, nor one ha[d] been forwarded to them." (Doc. 1-2, p. 14.) The case manager provided the same response on March 13, 2018, after Morales again requested a copy of the DHO report. (Id. at p. 24.) Despite the BOP's practice of record keeping, it has not produced any record that Morales received a copy of the DHO report until April 24, 2018. In sum, Respondent does not attempt to offer any evidence to rebut Morales' evidence that he did not receive a copy of the DHO report, and it does not appear that Respondent could.

Respondent's legal response to this due process claim is only slightly less feeble than Respondent's factual response. Respondent offers no substantive response to this allegation of a due process violation except to badly state that, because Morales has now been provided with a copy of the DHO report, the "allegation is now moot." (Doc. 11, pp. 8–9.) Respondent offers no precedent or even reasoning in support of this argument. He argues that all the BOP regulations require is for the DHO report to be provided, and while it is "ordinarily" provided within fifteen (15) days, that is a deadline to which adherence is not necessary. Thus, under Respondent's theory, the BOP can withhold the DHO's written statement of findings of fact for an indefinite length of time, and as long as the inmate receives the statement someday, even after litigation commences, no due process violation occurs. Respondent does not cite, and the Court is not aware of, any authority for this proposition. Moreover, Eleventh Circuit authority contradicts Respondent's line of reasoning. See Dean-Mitchell, 837 F.3d at 1113–14 (reversing summary judgment in favor of respondent an remanding to district court where evidence "does not provide

a clear paper trail establishing" petitioner's receipt of incident report and DHO report even where respondent had provided copy of DHO report in response to petition).

The Court is aware that some courts have excused the failure to provide a DHO report where the respondent demonstrates that no harm was caused by the failure. See Brown v. Rathman, No. 1:11-CV-01470-RDP, 2013 WL 5923722, at *9 (N.D. Ala. Oct. 31, 2013) ("While there is not an Eleventh Circuit case dealing with this issue, other circuits have held that delays of substantially greater than 10 days in providing an inmate with an adverse DHO decision were not a violation of the Fifth Amendment so long as the deficiency was remedied and did not prevent the inmate from administratively appealing the adverse DHO decisions.") (citing Deroo v. Holinka, 373 F. App'x 617, 618–19 (7th Cir. 2010); Staples v. Chester, 370 F. App'x 925, 929–30 (10th Cir. 2010); Cook v. Warden, Fort Dix Corr. Inst., 241 F. App'x 828, 829 (3d Cir. 2007)). However, despite having been directed to show cause why the Court should not grant Morales' Petition, (doc. 4, p. 1), and despite having filing two (2) responsive briefs in this case, Respondent has not made a harmless error argument. Therefore, Respondent has waived any argument of harmless error or lack of prejudice, and the Court need not delve into that issue.

Moreover, even if Respondent had not waived a defense of harmless error, such a defense would be unavailing. In Wolff, the Supreme Court described the following purposes of the requirement for a written statement of reasons:

> Written records of proceedings will thus protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding. Further, as to the disciplinary action itself, the provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly. Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others.

418 U.S. at 565. As the Seventh Circuit Court of Appeals has explained, "[w]ithout a detailed statement of the Committee's findings and conclusions, a reviewing court (or agency) cannot determine whether the finding of guilt was based on substantial evidence or whether it was sufficiently arbitrary so as to be a denial of the inmate's due process rights." Chavis v. Rowe, 643 F.2d 1281, 1287 (7th Cir. 1981).

In this case, the BOP frustrated these purposes by failing to provide Morales any statement of reasons until after he filed his habeas petition. While Morales was able to appeal his sanctions and file this habeas petition, the failure to provide him a DHO report prevented him from making some arguments and limited the evidence he could offer on the arguments he did make. As Morales explains, upon appeal to the Regional Office and the Central Office, he argued the he "had not received a copy of the DHO and was forced to submit his appeals without the benefit of one in order not to be time barred." (Doc. 13, p. 17.) Morales' administrative appeal documents and his requests for a DHO report to his unit team support this argument. Respondent does not reply to this argument at all.

Morales further argues that the production of the DHO report after he filed his habeas petition did not moot or cure the due process violation, because "[t]he report was material to conduct petitioner's administrative Appeals. The failure to provide the report . . . resulted in forcing petitioner to file an appeal without the benefits of the transcripts to the proceedings." (Id. at p. 19.) Again, Respondent provides no response to this argument whatsoever.

Not only are Morales' contentions of prejudice unrefuted by Respondent, they are supported by the record. For example, in his appeal to BOP's Central Office, Morales asserted, "[f]urther, since he never received a DHO report, he has been unable to address [the reasoning for the change in charge code] on appeal since it is unknown on what evidence did the DHO

relied on to change the offense with which Morales was charged, to a more severe offense." (Doc. 1-2, p. 21.)  The Administrator's response to this appeal states, "[t]he DHO's decision was based upon the evidence detailed in Section V of the DHO report."  (Id. at p. 22.)  This reliance on the DHO report demonstrates the centrality of the DHO report to the review of the disciplinary sanctions.  The prejudice Morales experienced is further demonstrated by the claims that he could not pursue during his administrative appeal.  In his appeal to BOP's Central Office, he stated, "[a]s established by the Unit Team's response, no copy of [the DHO report] has ever been made available.  Morales was prejudiced because this due process violation has prevented him from challenging the DHO findings and conclusions."  (Id. at p. 21.)  Indeed, now that Morales has been provided a copy of the DHO report, it is clear that he challenges the evidence the DHO relied upon in sanctioning him.  For example, Morales strongly disputes the DHO's statement that Morales admitted that he fought with inmate Tasis and threw punches against him. (See Doc. 13, pp. 1–2; Doc. 16, p. 6.)[6]  However, without the DHO report, Morales could not challenge this conclusion in his administrative appeal or make any other credible challenge regarding the sufficiency of the evidence.  In other words, without a statement of the DHO's findings of fact, Morales could not challenge those findings.[7]  Thus, without the DHO report, Morales was at a "severe disadvantage in propounding his own cause," and the tardy production of the report after the filing of his habeas petition does not cure that disadvantage.  Wolff, 418

---

[6]  As Morales makes clear in his August 2, 2017, Affidavit, (doc. 11-2), he did not conjure up this disputed characterization of his interaction with Tasis after the filing of his Petition in order to fabricate prejudice.

[7]  To compound this problem, because Morales could not challenge the sufficiency of the evidence supporting the DHO's determination without the DHO report, he could not exhaust his administrative remedies as to such a challenge.  Thus, he likely could not bring a sufficiency of the evidence challenge in this Section 2241 Petition as such a claim would be barred by failure to exhaust.  Even if he could challenge the unexhausted claim of sufficiency of the evidence through a Section 2241 Petition, that challenge at this late stage of the review process would be subjected to a deferential "some evidence" standard.

U.S. at 565. Thus, he has again shown that the sanctions against him violate his right to due process.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **GRANT** Morales' Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), and **ORDER** Respondent to restore Morales twenty-seven (27) days' good conduct credit and expunge this violation from his BOP records. The Court should further **DIRECT** the Clerk of Court to file the appropriate judgment of dismissal and **CLOSE** this case.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Morales and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 6th day of August, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA